IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| YVETTE MILLER, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | NO.  14-2725 |
| 3G COLLECT, LLC. | : | |
| | : | |
| Defendant. | : | |

MEMORANDUM

RONALD L. BUCKWALTER, S.J.                                September 16, 2014

      Currently pending before the Court is Plaintiff Yvette Miller's Motion to Dismiss Defendant's Counterclaim.  For the following reasons, the Motion is denied.

**I.**      **FACTUAL BACKGROUND**

      According to the facts set forth in the Complaint, Plaintiff Yvette Miller is an individual residing in Philadelphia, Pennsylvania and Defendant 3G Collect, LLC ("3G") is a New York business entity. (Compl. ¶¶ 3–4.)  Beginning in November 2013, Defendant allegedly started calling Plaintiff on her cellular telephone using either an automated telephone dialer system ("ATDS" or "predictive dialer") or an artificial/prerecorded voice.  (Id. ¶¶ 5–6.)  When Plaintiff would answer the ATDS calls, she would hear a pre-recorded message stating, "Hi, this is 3G Collect, we are calling . . ."  (Id. ¶ 7.)  Plaintiff would then have to listen to a period of music before she was able to follow the automated prompt to be connected with a live representative. (Id.)  Plaintiff, however, was not able to speak with a live representative as she was put on hold for an indefinite amount on each occasion that she followed the prompt.  (Id. ¶ 8.)  Defendant's

automated system did not provide Plaintiff with an "opt-out" option to request the calls cease. (Id. ¶ 9.)

In addition to the ATDS calls, Defendant also sent text messages to Plaintiff's cellular phone. (Id. ¶ 10.) At all times, Defendant placed calls in attempts to collect payment from Plaintiff. (Id. ¶ 11.) The calls were not placed for emergency purposes and Plaintiff allgedly did not provide consent for the calls. (Id. ¶¶ 12–13.)

On May 12, 2014, Plaintiff filed the present litigation, alleging a violation of the Telephone Consumer Protection Act, 42 U.S.C. § 227, et seq. The Complaint alleges that each of the calls placed by Defendant to Plaintiff were done using an automatic telephone dialing system and/or a prerecorded message, and were placed without Plaintiff's express consent and without any "emergency purpose." (Id. ¶¶ 15–16.) Plaintiff now seeks damages for both negligent and intentional violation of the TCPA. (Id. ¶¶ 18–20.)

Defendant submitted its Answer with Counterclaim on July 10, 2014. In that Counterclaim, Defendant asserts that on October 3, 2013, a request for a collect call was received by Defendant from an initiating party to be placed through to a telephone number that Defendant believes is associated with Plaintiff Yvette Miller. (Countercl. Compl. ¶ 2.) As part of receiving the request to accept a collect phone call, Plaintiff would have heard a series of instructions which directed her to follow prompts that allowed her either to accept the collect call and authorize Defendant to invoice her for the call via her cellular telephone, or to decline to receive the collect call. (Id. ¶ 3.) On October 3, 2013, Plaintiff authorized Defendant to complete the collect call by following the series of prompts, which included making certain key strokes on the telephone both to accept the call and to verbally authorize 3G to connect the collect call and to

bill her for the call by text messaging. (Id. ¶ 5.) Defendant then connected the collect call to Plaintiff's cellular telephone. (Id. ¶ 6.) Despite these authorizations, Plaintiff has failed and refused to pay the invoice for the collect call that was transmitted to her on or about October 4, 2013. (Id. ¶ 7.) Defendant has made numerous efforts to contact Plaintiff to obtain payment and Plaintiff has failed to and refused to pay. (Id. ¶ 8.) The total amount now due and owing, including late fees and collection charges, is $61.75. (Id. ¶ 9.)

On July 28, 2014, Plaintiff filed the present Motion to Dismiss Defendant's Counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(1). Defendant responded on August 14, 2014, and Plaintiff submitted a Reply Brief on August 20, 2014. The Motion is now ripe for judicial review.

II. STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure12(b)(1) challenges the power of a federal court to hear a claim or a case. Petruska v. Gannon Univ., 462 F.3d 294, 302 (3d Cir. 2006). When presented with a Rule 12(b)(1) motion, the plaintiff "will have the burden of proof that jurisdiction does in fact exist." Id. at 302 n.3. There are two types of Rule 12(b)(1) motions. A "facial" attack assumes that the allegations of the complaint are true, but contends that the pleadings fail to present an action within the court's jurisdiction. Id.; Mortenson v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). If the complaint is deficient as pled, the court should grant leave to amend before dismissing it with prejudice. Shane v. Fauver, 213 F.3d 113, 116–17 (3d Cir. 2000). A "factual" attack, on the other hand, argues that, while the pleadings themselves facially establish jurisdiction, one or more of the factual allegations is untrue thereby causing the case to fall outside the court's jurisdiction. Mortenson, 549 F.2d at

891.  In such a case, "no presumptive truthfulness attaches to plaintiff's allegations" and the court must evaluate the merits of the disputed allegations because "the trial court's . . . very power to hear the case" is at issue.  Id.

### III.    DISCUSSION

Plaintiff now contends that the Court must dismiss Defendant's Counterclaim under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction.  Plaintiff asserts that the Court has original jurisdiction over her claim, which alleges violations of a federal statute, but that Defendant's Counterclaim raises only issues of state law.  As such, the sole basis for the Court's exercise of jurisdiction over the Counterclaim is supplemental jurisdiction under 28 U.S.C. § 1367.  Plaintiff argues, however, that the exercise of supplemental jurisdiction over the counterclaim is not appropriate because it is not "part of the same case or controversy under Article III of the United States Constitution," as is required pursuant to 28 U.S.C. § 1367(a).  Defendant responds that the Court properly has jurisdiction over the Counterclaim.

To resolve this dispute, the Court must initially determine whether these alleged actions are compulsory counterclaims under Fed. R. Civ. P. 13(a) or, instead, are permissive counterclaims analyzed pursuant to Fed. R. Civ. P. 13(b).  Sun Nat. Bank v. Rapid Circuits, Inc., No. Civ.A.11-432, 2011 WL 1899179, at *2–3  (E.D. Pa. May 9, 2011).  "Compulsory" counterclaims are, in part, claims that "arise[ ] out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed. R. Civ. P. 13(a)(1)(A).  As described by the Third Circuit Court of Appeals:

> For a claim to qualify as a compulsory counterclaim, there need not be precise identity of issues and facts between the claim and the counterclaim; rather, the relevant inquiry is whether the counterclaim "bears a logical relationship to an

>  opposing party's claim." . . . The concept of a "logical relationship" has been viewed liberally to promote judicial economy.  Thus, a logical relationship between claims exists where separate trials on each of the claims would "involve a substantial duplication of effort and time by the parties and the courts." . . . Such a duplication is likely to occur when claims involve the same factual issues, the same factual and legal issues, or are offshoots of the same basic controversy between the parties. . . . In short, the objective of Rule 13(a) is to promote judicial economy, so the term "transaction or occurrence" is construed generously to further this purpose.

Transamerica Occidental Life Ins. Co. v. Aviation Office of Am., Inc., 292 F.3d 384, 389–90 (3d Cir. 2002) (internal citations and footnotes omitted); see also Vukich v. Nationwide Mut. Ins. Co., 68 F. App'x 317, 319 (3d Cir. 2003) (citing Transamerica Occidental, 292 F.3d at 389 (quoting Xerox Corp. v. SCM Corp., 576 F.2d 1057, 1059 (3d Cir. 1978))).  The Third Circuit has found that "a counterclaim is logically related to the opposing party's claim where separate trials on each of their respective claims would involve a substantial duplication of effort and time by the parties and the courts."  Vukich, 68 F. App'x at 319 (citing Great Lakes Rubber Corp. v. Herbert Cooper Co., 286 F.2d 631, 634 (3d Cir. 1961)).  If a defendant fails to bring a compulsory counterclaim, he is barred from asserting that claim in a future proceeding.  Fed. R. Civ. P. 13(a).

  Here, Plaintiff's cause of action arises under the TCPA, a federal statute.  The Court therefore has federal question jurisdiction to hear this claim pursuant to 28 U.S.C. § 1331.  Defendant's Counterclaim, on the other hand, is a breach of contract action to collect a debt, which arises under purely state law.  Plaintiff now argues that in cases involving similar federal consumer protection statutes, such as the Truth in Lending Act ("TILA"), 15 U.S.C. § 1640, and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et seq., "[f]ederal courts have ruled that counterclaims for the collection of underlying debts are not compulsory."  (Pl.'s

5

Mem. Supp. Mot. Dismiss 4.)  In each of those cases, although both the original claim under the TILA or the FDCPA and the defendant's debt collection counterclaim arose out of a single transaction, the courts found that the claims did not involve the same basic controversy between the parties.  For example, in Zeltzer v. Carte Blanche Corp., 414 F. Supp. 1221 (E.D. Pa. 1976), the plaintiff brought a putative class action against the defendant under the TILA and the defendant counterclaimed for the balance on the plaintiff's account due and owing to defendant.  Id. at 1222.  The court found that the counterclaim was not compulsory, as follows:

> While the two claims stem from the same underlying business transaction, they involve entirely distinct legal issues: plaintiff's claim concerns the application of the Federal Truth in Lending Act; the counterclaim does not concern the Truth in Lending Act or any other federal law.  Moreover, the factual issues are distinct.  Plaintiff's claim entails proof of a limited set of facts relating to the nature of the disclosures made by defendant.  The counterclaim involves proof of a contract, its validity, the record of payments and plaintiff's default.  In these circumstances, where claim and counterclaim lack even a close similarity of factual and legal issues, I find that the respective claims are 'offshoots' of the same basic transaction, but not the 'same basic controversy between the parties,' and that separate trials on each distinct claim will not involve a 'substantial duplication of effort and time by the parties and the courts.'  The two claims are thus not logically related in the Court's view of the standard enunciated in Great Lakes Rubber, supra.  Accordingly, defendant's counterclaim is not compulsory, but permissive.

Id. at 1223–24 (footnote omitted); see also Herrman v. Atl. Richfield Co., 72 F.R.D. 182 (E.D. Pa. 1976) (relying on Zeltzer to dismiss defendant's debt collection counterclaims in a federal antitrust suit).

Similarly, in Maddox v. Kentucky Finance Co., 736 F.2d 380, 382 (6th Cir. 1984), the Sixth Circuit was faced with a debt collection counterclaim under state law brought in response to the plaintiff's claim under the TILA.  The court reviewed the existing appellate jurisprudence in this area and declined to find the counterclaims compulsory, as follows:

6

Three circuits have analyzed the question of whether in a TILA action a counterclaim on the underlying debt is compulsory, giving the federal court ancillary jurisdiction. Each applied the logal relation test but reached different results. The Fourth Circuit in Whigham v. Beneficial Finance Co. of Fayetteville, 599 F.2d 1322 (4th Cir.1979) (2–1 decision), found that the debt counterclaim lacks any characteristics of a compulsory counterclaim. . . . While the TILA claim and the debt counterclaim arise out of the same transaction, said the court, they are not logically related. The TILA claim does not involve the obligations created by the underlying contract. Rather, the TILA claim enforces a federal policy regarding disclosure by invoking a penalty. The issues of fact and law are significantly different, according to the court, because the TILA claim involves only the federal statute and the debt claim only state law, and different evidence is needed to support each claim. . . . The court also expressed concern that allowing the creditor to proceed with the debt claim would impede expeditious enforcement of the federal penalty.

The Fifth Circuit in the same year decided Plant v. Blazer Financial Services, Inc. of Georgia, 598 F.2d 1357 (5th Cir. 1979), holding that the debt counterclaim is compulsory. In direct conflict with the Whigham court, the court found a logical relationship between the claim and the counterclaim. The court noted that a "single aggregate of operative facts, the loan transaction, gave rise to both" the TILA claim and the debt counterclaim . . . . The court acknowledged arguments that federal courts should not become entangled in state debt claims and should not infringe on the power of the state courts to adjudicate matters of state law. Nonetheless, the court concluded that judicial economy requires that the claim and counterclaim be tried together, for a determination that the debt is invalid under state law may in some cases affect recovery on the TILA claim, and federal judges are presumed competent to decide state law questions. . . .

The Seventh Circuit in Valencia v. Anderson Brothers Ford, 617 F.2d 1278 (7th Cir. 1980) . . . was confronted with the conflicting Whigham and Plant decisions, and chose to follow Whigham, finding the counterclaim non-compulsory. The court stated that there would be no real judicial economy in having the counterclaim compulsory, that "the sole connection between a TILA claim and a debt counterclaim is the initial execution of the loan document." . . . The court noted that treating such counterclaims as compulsory could undermine the objectives of TILA, because TILA plaintiffs could be faced with counterclaims exceeding their potential recovery under the act. . . . In addition, the court was concerned that TILA claims could not be expeditiously resolved if entangled with debt counterclaims. The TILA claims are heard by the court without a jury and ordinarily involve only questions of law based on the face of the loan documents.

We agree with the Whigham and Valencia courts which have held the debt counterclaim to be permissive rather than compulsory. While the claim and

> counterclaim do arise out of the same transaction within the literal terms of Rule 13(a), we do not believe that they are logically related in such a way as to make the counterclaim compulsory. The claim and counterclaim will present entirely different legal, factual, and evidentiary questions. It is not clear that the interests of judicial economy and efficiency would be served in the least by requiring that the two claims be heard together.

Id. at 382–83.

Finally, in Ayres v. National Credit Management Corp., No. Civ.A.90-5535, 1991 WL 66845, at *1 (E.D. Pa. Apr. 25, 1991), the plaintiff brought an action under the FDCPA alleging that the defendant debt collecting agency, in attempting to collect a debt allegedly owed by plaintiff, failed to send a proper notice of validation and used false and deceptive practices in attempting to collect the debt. Id. at *1. The defendant filed two counterclaims, one of which sought payment on the underlying debt allegedly owed by plaintiff. Id. The plaintiff moved to dismiss the counterclaims. The court found that there was no "logical relationship" between the counterclaim and the opposing party's claim, such relationship existing "where separate trials on each of [the parties'] respective claims would involve a substantial duplication of effort." Id. at *1 (quotations omitted). It remarked that "[a]lthough defendants' right to payment from plaintiff is certainly factually linked to the fairness of defendants' collection practices—there being no attempted collection without an alleged debt—a cause of action on the debt arises out of events different from the cause of action for abuse in collecting." Id. at *2. The court reasoned that "[t]he former centers on evidence regarding the existence of a contract, the failure to perform on a contract, or other circumstances leading to the creation of a valid debt. The latter centers on evidence regarding the improprieties and transgressions, as defined by the FDCPA, in the procedures used to collect the debt, regardless of the debt's validity." Id.

While, at first blush, these rulings appear to dictate the appropriate outcome in this matter, Plaintiff's reliance on these cases misses a key distinction among the various statutes. Under the portions of the TCPA pursuant to which Plaintiff brings her claim:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States–
>
>> (A) to make any call *(other than a call made for emergency purposes or made with the prior express consent of the called party)* using any automatic telephone dialing system or an artificial or prerecorded voice–
>>
>>> (i) to any emergency telephone line (including any "911" line and any emergency line of a hospital, medical physician or service office, health care facility, poison control center, or fire protection or law enforcement agency);
>>>
>>> (ii) to the telephone line of any guest room or patient room of a hospital, health care facility, elderly home, or similar establishment; or
>>>
>>> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call; . . .

47 U.S.C. § 227(b)(1)(A)(I) (emphasis added). Thus, unlike the TILA and FDCPA, the explicit terms of the TCPA make the giving of prior express consent by the debtor to the debt collector an absolute defense to liability. See Baird v. Sabre Inc., 995 F. Supp. 2d 1100, 1106–07 (C.D. Cal. 2014) (holding that consumer gave permission to be called at cell phone number she gave to airline when she booked flight reservations on its website, and, thus, she knowingly released her cell phone number to airline and consented to be called at that number by an automated dialing machine, under the TCPA); Chavez v. Advantage Grp., 959 F. Supp. 2d 1279, 1281 (D. Colo. 2013) (finding no liability under TCPA when debtor expressly consented to be contacted by debt

collector on her cellular phone by providing her number to creditor); <u>Jordan v. ER Solutions, Inc.</u>, 900 F. Supp. 2d 1323, 1327 (S.D. Fl. 2012) (holding that the TCPA allows a collector to make automated or prerecorded collection calls if the called party has given prior express consent; consumer gave express consent to automated collection calls when she purchased items from defendant and, as a term and condition of her purchase, agreed that store from which she purchased items, or any other owner or servicer of her account, could use any information provided to contact her regarding her account, including for debt collection, and agreement also stated she agreed contact could be made using automated dialing equipment and prerecorded messages); <u>Saunders v. NCO Fin, Sys., Inc.</u>, 910 F. Supp. 2d 464, 467 (E.D.N.Y. 2012) ("Here, plaintiff concedes that by listing only his cell phone number with PACER, he gave both PACER and NCO, its collection agent, 'prior express consent.'  This is a concession that plaintiff must make, as the authorities are almost unanimous that voluntarily furnishing a cellphone number to a vendor or other contractual counterparty constitutes express consent.").

Defendant's Counterclaim, in this case, asserts that on October 3, 2013, a request for a collect call was received by Defendant from an initiating party to be placed through to a telephone number that Defendant believes is associated with Plaintiff Yvette Miller. (Countercl. Compl. ¶ 2.)  As part of receiving the request to accept a collect phone call, Plaintiff would have heard a series of instructions which directed her to follow prompts that allowed her either to accept the collect call and authorize Defendant to invoice her for the call via her cellular telephone, or to decline to receive the collect call.  (Id. ¶ 3.)  On October 3, 2013, Plaintiff authorized Defendant to complete the collect call by following the series of prompts, which included making certain key strokes on the telephone both to accept the call and to verbally

authorize 3G to connect the collect call and to bill her for the call by text messaging. (Id. ¶ 5.) Defendant then connected the collect call to Plaintiff's cellular telephone. (Id. ¶ 6.) Despite these authorizations, Plaintiff has failed and refused to pay the invoice or the collect call that was transmitted to her on or about October 4, 2013. (Id. ¶ 7.)

Had Plaintiff's Complaint and Defendant's Counterclaim shared nothing more than the same initial transaction—the original collect phone call—the Court would concur that the Counterclaim is not compulsory. Contrary to Plaintiff's argument and unlike the foregoing TILA and FDCPA cases, however, both the Complaint and the Counterclaim share more than the same originating transaction. They are logically related in that by proving its Counterclaim—*i.e.*, that Plaintiff consented to receiving a collect call on her cell phone and to paying the associated charges—Defendant effectively defends against the TCPA claim by proving that Plaintiff provided express consent to being billed at that cell phone number. In other words, a ruling as to the validity of Defendant's Counterclaim necessarily dictates the outcome of a ruling on Plaintiff's Complaint and vice versa. To require that these claims be litigated separately—one in state court and one in federal court—would result in "substantial duplication of effort and time by the parties and the courts." Judicial economy therefore counsels the Court to deem the Counterclaim compulsory. In turn, Plaintiff's Motion to Dismiss for lack of jurisdiction is denied.[1]

---

[1] Having reached this conclusion, the Court need not address the parties' arguments regarding whether the Court has supplemental jurisdiction over the Counterclaim.